# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

**RECEIVED**

NOV 1 3 2019

CLINTON STRANGE,

Plaintiff

TONY R. MOORE CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT LOUISIANA
BY

5:19-cv-1479

v.

JB MARKETING, INC. d/b/a MY BUSINESS RANKINGS;

a Florida Profit Corporation

&

CALL CENTER PROS,

a Dominican Republic Business Entity

Defendants

# CIVIL ACTION COMPLAINT
# FOR WILLFUL AND KNOWING VIOLATIONS OF:
# THE TELEPHONE CONSUMER PROTECTION ACT OF 1991

**Jury Trial Demanded**

## PRELIMINARY STATEMENTS:

1. This is an action brought in good faith by an adult individual against JB MARKETING,

   INC. d/b/a MY BUSINESS RANKINGS ("JB Marketing") a Florida Profit Corporation and

   CALL CENTER PROS ("CCP") a Dominican Republic Business Entity; herein and

   collectively ("Defendants") for willful and knowing violations of the Telephone Consumer

   Protection Act ("TCPA"). The Plaintiff is seeking a maximum award for damages and

   injunctive relief.

## JURISDICTION & VENUE:

2. **Jurisdiction** arises in this Court under Federal Question Jurisdiction pursuant to 28 U.S.

   Code § 1331.

3. **Venue** lies proper in this U.S. District Court pursuant to 28 U.S. Code § 1391(b)(3).

## THE PARTIES:

4. **Plaintiff** CLINTON STRANGE is an adult individual and a "person" as that term is defined

   by 47 U.S.C. § 153(39). He resides at the address of:

   CLINTON STRANGE

   7021 WINBURN DRIVE

   GREENWOOD, LA 71033

5. **Defendant** JB MARKETING, INC. d/b/a MY BUSINESS RANKINGS is a Florida Profit

   Corporation. According to the Florida Secretary of State this Corporation can be served at

   the address of:

   JB MARKETING, INC. d/b/a MY BUSINESS RANKINGS

   c/o: JARED B. SCHAGRIN (Registered Agent)

3440 HOLLYWOOD BOULEVARD

SUITE 415

HOLLYWOOD, FL 33021

6. **Defendant** CALL CENTER PROS is a Dominican Republic Business Entity. According to this entity's Facebook page they can be served at:

CALL CENTER PROS

c/o: JARED B. SCHAGRIN (CEO)

AVENIDA WINSTON CHURCHILL No.77

SANTO DOMINGO, DOMINICAN REPUBLIC

**FACTUAL ALLEGATIONS:**

**SECTION I:**

**THE TCPA STATUTES THAT WERE ALLEGEDLY VIOLATED**

7. 47 U.S. Code § 227 states in relevant part under subsection b(1): "It shall be unlawful for any person within the United States, or any person outside the if the recipient is within the United States— **(A)** to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice— **(i)** to any emergency telephone line (including any "911" line and any emergency line of a hospital, medical physician or service office, health care facility, poison control center, or fire protection or law enforcement agency); **(ii)** to the telephone line of any guest room or patient room of a hospital, health care facility, elderly home, or similar establishment; or **(iii)** to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States…"

8. 47 U.S. Code § 227 states in relevant part under subsection c(5): " A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State— **(A)** an action based on a violation of the regulations prescribed under this subsection to enjoin such violation, **(B)** an action to recover for actual monetary loss from such a violation, or to receive up to \$500 in damages for each such violation, whichever is greater, or **(C)** both such actions. It shall be an affirmative defense in any action brought under this paragraph that the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection. If the court finds that the defendant willfully or knowingly violated the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph."

9. 47 U.S. Code § 227 states in relevant part under subsection e(1): "It shall be unlawful for any person within the United States, in connection with any telecommunications service or IP-enabled voice service, to cause any caller identification service to knowingly transmit misleading or inaccurate caller identification information with the intent to defraud, cause harm, or wrongfully obtain anything of value, unless such transmission is exempted pursuant to paragraph (3)(B).". This subsection is referred to as The Truth In Caller ID Act of 2009 as Amended to the Communications Act of 1934.

10. The Plaintiff alleges that the Defendants violated all three of these subsections in the foregoing paragraphs during the two calls he can document (and *very* likely many more that he cannot document *at this time*) that are referenced herein.

11. The Defendants never had the Plaintiff's consent to receive autodialed calls or pre-recorded voice Robocalls from the Defendants.

12. The Plaintiff has no established business relationship with the Defendants.

13. The Plaintiff never inquired about the Defendant's products, good and or services.

14. The Defendants' calls were made to promote Defendants' products, good and or services which constituted telemarketing.

## SECTION II:

## THE ALLEGEDLY VIOLATIVE CALLS

15. On September 11, 2019 at 11:02am CST the Defendants placed a Robocall to the Plaintiff's cellphone number 318-423-5057 from a number that appeared on the Plaintiff's Caller ID as 318-217-3195. The Plaintiff answered the call and a pre-recorded voice message began playing, and it was in regard to a "Google Business Listing". The Plaintiff disconnected the call after fourteen (14) seconds.



16. The Plaintiff phoned back to the number that appeared on the Caller ID as 318-217-3195, and feigned interest and or used subterfuge to obtain the Defendants' identity by allowing them to bill his credit card for $399.00 and obtain digital evidence such as emails from the Defendants. The information led to the Plaintiff being able to discover two web addresses associated with the Defendants, and the identification of the Defendants' U.S. based payment processor (Aynax, Inc.).

17. The Plaintiff phoned the Defendants' toll free number that appeared on their website 800-229-3208 on September 11, 2019 at 12:31pm CST and repeatedly asked that the Defendants identify their physical address, and the "Legal name" of the entity but the Defendants' agent

would only state that they were physically located in Hollywood, Florida. This was a false and mis-leading statement.

18. The Plaintiff learned upon further investigation of social media platforms that My Business Rankings is a Fictitious Name that was registered to JB Marketing by the Florida Secretary of State on July 23, 2019.

19. The Plaintiff contacted the payment processor (Aynax, Inc.) and JB Marketing with a legal demand letter (via email) on September 12, 2019 [See Exhibit A].

20. On September 13, 2019 at 2:47pm CST Jared B. Schagrin the CEO of CCP, and President of JB Marketing emailed the Plaintiff a refund confirmation for the $399.00 credit card charge [See Exhibit B].

21. On September 13, 2019 at 2:39pm CST a person identifying themselves as "Jaden" (but *possibly* it was really Jared B. Schagrin) phoned the Plaintiff to inform him of the refund. The Plaintiff again explained that he planned to bring an action (to enforce the TCPA) against the entities that were being operated by Mr. Schagrin, but he ,"Jaden" , seemed indifferent to Plaintiff's requests and concerns.

22. On September 20, 2019 at 2:17pm CST the Defendants phoned the Plaintiff *again* from a number that appeared on his Caller ID as 720-961-5367 (a Denver, Colorado area number). There was no pre-recorded voice message, but the Plaintiff (at the very beginning of the call) heard the tell-tale sound of a Vici-Dial Balloon "pop" and there was a momentary pause of a few seconds after which Plaintiff was connected to an agent of the Defendants who identified herself as someone who was calling on behalf of "My Business Rankings". Vici-Dial platform technology is an ATDS.



23. The agent apparently unaware of the Plaintiff's written Do-Not-Call request and legal demand communications with the owner phoned to try and "up-sell" the Plaintiff on the Defendants' services.

24. The Plaintiff communicated to the agent that the owner or a manager should contact the Plaintiff to see if an amicable resolution could be reached in regard to the alleged TCPA violations including the one they had just committed *again*.

25. The Plaintiff has since received no further violative calls, nor any response to his legal demands.

## SECTION III:

## HOW THE PLAINTIFF SOUGHT TO MITIGATE HIS DAMAGES

26. The Plaintiff in response to a deluge of TCPA violative Robocalls registered his cellphone number 318-423-5057 on the U.S. Federal Trade Commission's Do-Not-Call Registry on January 3, 2018 [See Exhibit C].

27. On August 2, 2018 the Plaintiff registered his cellphone number 318-423-5057 with the Louisiana Public Service Commission's Do-Not-Call Program [See Exhibit D].

28. Plaintiff feels that in this instant case he made an extraordinary effort to communicate that the TCPA violative calls were both unlawful, and unwanted.

## SECTION IV:

## HOW THE PLAINTIFF IDENTIFIED THE DEFENDANTS

29. The Plaintiff used his newly acquired investigative skills to comb through social media sites, domain registry, and consumer complaint websites until he was able to unmask the Defendants' true identity. They are certainly [n]ot located in Hollywood, Florida.

30. The address where Jared B. Schagrin registered his principal place of business to is a virtual office complex.



31. On information and belief the Plaintiff alleges that how the "operation" works is that the Defendants obtain lead lists and then program their Auto Dialers to place thousands of Robocalls each work-day to potential Business Customers (B2B Sales Calls), and the CCP agents accept those calls that are warmly transferred to their (CCP's) inbound call center. The inbound call center agent/s process a credit card transaction (for amounts equal to or less than $399.00) and that transaction is processed by and through Aynax, Inc. (the Defendants' U.S. Based payment processor), and the funds are transferred either to a U.S. Based account in the name of an entity controlled by Mr. Jared B. Schagrin, or to an account in the Dominican Republic controlled by Mr. Jared B. Schagrin.

32. The Defendants' employees and or agents are instructed to never reveal where they really are physically located and use telephone Caller ID manipulation techniques that disguise that the Defendants are really in the Dominican Republic.

33. In actuality the whole telemarketing scheme and operation is ran out of a Dominican
    Republic call center. Plaintiff found the below image was posted by Jared B. Schagrin on his
    Facebook page on September 9, 2019.



34. The owner / operator and financial benefactor of the Defendants, Jared B. Schagrin, states
    on his Facebook page that he lives in Santo Domingo, Dominican Republic, and from the
    information that the Plaintiff has been able to Data Mine off the internet believes that this
    individual may reside in the Dominican Republic. [See Exhibit E – faces and images of
    minor children have been obscured for privacy].

## SECTION V:

## THE CONSUMER HARM THAT THE PLAINTIFF SUFFERED

35. The Plaintiff receives many Robocalls every week. Many of these Robocalls and other calls placed using an ATDS irritate the Plaintiff to no end.

36. In regard to the calls that these specific Defendants placed to the Plaintiff's cellphone they [a]bsolutely were an annoyance, a nuisance, and violated the Plaintiff's Fourth Amendment rights to privacy, seclusion and solitude.

37. Each of the Defendants' calls caused the Plaintiff's cellphone to awaken from "rest mode" and illuminate, vibrate and ring which used a measurable amount of the Plaintiff's cellphone's battery power level.

38. The FCC has recognized also that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

39. The Defendants' alleged unlawful calls also temporarily dispossessed the Plaintiff of his movable property which is actionable under Louisiana Civil Code Article 2315(A) which states "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.". They were also a Civil Trespass to Plaintiff's Chattel.

40. Louisiana Civil Code Article 2320 states in regard to Defendants' employees and agents termed as "Acts of servants, students or apprentices: Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed. Teachers and artisans are answerable for the damage caused by their scholars or apprentices, while under their superintendence. In the above cases, responsibility only attaches, when the masters or employers, teachers and artisans, might

have prevented the act which caused the damage, and have not done it. The master is
answerable for the offenses and quasi-offenses committed by his servants, according to the
rules which are explained under the title: Of quasi-contracts, and of offenses and quasi-
offenses.

41. The Defendants are liable to the Plaintiff for all the foregoing harms that they caused, but
the actual damages are less than the minimum amount of statutory damages that the Court
should award the Plaintiff under the TCPA.

## SECTION VI:

## JURISDICTION AND VENUE STATEMENTS

42. The Defendants directed their unlawful conduct into the forum State of Louisiana by way of
placing an allegedly unlawful Robocall to the Plaintiff's cellphone number 318-423-5057.
The Defendants subjected themselves to the personal jurisdiction of [t]his U.S. District
Court by doing so *See Strange v. Carnival Corp.*, No. 18-0295, 2019 WL 1281251, at \*9
(W.D. La. March 20, 2019) (citing cases and approving of courts' rejections of the argument
that a defendant's ignorance of the location of the phone the defendant had called defeated
jurisdiction); *Luna v. Shac*, LLC, No. 14-607, 2014 WL 3421514, at \*3 (N.D. Cal. July 14,
2014) (holding that sending unsolicited text messages to forum state subjected the defendant
to personal jurisdiction in that state regardless of the defendant's knowledge of the recipient
phone's location); *See also, Schneider v. Hardesty,* 669 F.3d 693, 700–01 (6th Cir.2012)
("[T]he only possible explanation [for defendant's ignorance of the plaintiff's geographic
location] is that [he] intentionally buried his head in the sand, and that cannot save [him]
from being subject to jurisdiction.").

43. Moreover, the Defendants subjected themselves to the personal jurisdiction of this Court by placing a call from a number (appearing on the Plaintiff's Caller ID) that made it seem as though a local party had placed the call. The area code and prefix associated (with 318-217) relates to the geographic area of Waterproof, Louisiana or rural Tensas Parish, Louisiana



which is within the jurisdiction of the Western District of Louisiana:



WESTERN DISTRICT OF LOUISIANA – SOURCE wikipedia.org



TENSAS PARISH, LA – SOURCE wikipedia.org

## THE COUNTS:

## COUNT I:

### (Plaintiff v. Defendants)

## NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

### 47  U.S. Code § 227(c)(5)

44. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length

herein.

45. Subsection c of the TCPA makes it unlawful for a telemarketer to place more than one

telemarketing call to a number registered on the Federal Do-Not-Call list in a twelve-month

period unless they have consent. They did not.

46. Evidence presented at trial will show that the Defendants placed more than one

telemarketing call to the Plaintiff's cellphone which is registered on the Do-Not-Call list

within a twelve-month period.

47. To the extent the Court finds that this conduct was only negligent the Plaintiff seeks

damages of $500.00 for each and every violation under this count.

## COUNT II:

### (Plaintiff v. Defendants)

## WILLFUL AND KNOWING VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

### 47 U.S. Code § 227(c)(5)

48. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length

herein.

49. Subsection c of the TCPA makes it unlawful for a telemarketer to place more than one

telemarketing call to a number registered on the Federal Do-Not-Call list in a twelve-month

period unless they have consent. They did not.

50. Evidence presented at trial will show that the Defendants placed more than one telemarketing call to the Plaintiff's cellphone which is registered on the Do-Not-Call list within a twelve-month period.

51. To the extent the Court finds that this conduct was done willfully and knowingly the Plaintiff seeks damages of $1500.00 for each and every violation under this count.

## COUNT III:

### (Plaintiff v. Defendants)

## NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT
### 47 U.S. Code § 227(b)(1)(A)(iii)

52. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

53. Subsection b of the TCPA makes it unlawful for a telemarketer to place calls to a cellphone using an ATDS or a pre-recorded voice (message) without the written consent of the called party. The Defendants did not have the Plaintiff's consent.

54. Evidence presented at trial will show that the Defendants placed dozens of such calls to the Plaintiff's cellphone. The Plaintiff at this time can only document two.

55. To the extent the Court finds that this conduct was only negligent the Plaintiff seeks damages of $500.00 for each and every violation under this count.

## COUNT IV:

### (Plaintiff v. Defendants)

## WILLFUL AND KNOWING VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

### 47 U.S. Code § 227(b)(1)(A)(iii)

56. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

57. Subsection b of the TCPA makes it unlawful for a telemarketer to place calls to a cellphone using an ATDS or a pre-recorded voice (message) without the written consent of the called party. The Defendant did not have the Plaintiff's consent.

58. Evidence presented at trial will show that the Defendants placed dozens of such calls to the Plaintiff's cellphone. The Plaintiff at this time can only document two.

59. To the extent the Court finds that this conduct was done willfully and knowingly the Plaintiff seeks damages of $1500.00 for each and every violation under this count.

## COUNT V:

### (Plaintiff v. Defendants)

## NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

### 47 U.S. Code § 227(e)(1)

60. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

61. Plaintiff is unable to recover monetary damages under this count which alleges violations of the Truth In Caller ID Act as amended to the TCPA, but seeks injunctive relief enjoining the Defendants from future violations.

## COUNT VI:

### (Plaintiff v. Defendants)

## WILLFUL AND KNOWING VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

### 47 U.S. Code § 227(e)(1)

62. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

63. Plaintiff is unable to recover monetary damages under this count which alleges violations of the Truth In Caller ID Act as amended to the TCPA, but seeks injunctive relief enjoining the Defendants from future violations.

64. While Plaintiff cannot recover money damages directly under this count the Plaintiff prays that the Court would consider violations of this section in its ruling when weighing *whether or not* to stack and treble the damages under the other counts and causes of action in the complaint.

**PRAYER FOR RELIEF:**

## Jury Trial Demand;

Plaintiff demands trial by jury on all issues so triable.

## Prayer for Relief;

WHEREFORE, Plaintiff seeks judgement in Plaintiff's favor and damages against the Defendants, based on the following requested relief:

Statutory Damages;
Treble Damages;
Stacked Damages;
Pre and Post Judgement Interest;
Enjoinder from further violations of these parts;
Costs of litigating the action together along with all reasonable attorney's fees (if any) and court costs;
And such other and further relief as may be necessary, just and proper.

Respectfully Submitted,

X _____         11-12-2019

Clinton Strange
Pro Se                            Dated
7021 Winburn Drive
Greenwood, LA 71033
318-423-5057
parsmllc@gmail.com